EXECUTORS AND ADMINISTRATORS (§ 221*)—ALLOWANCE OF CLAIM—SUFFICIENCY OF EVIDENCE.

　Where an executor's claim against an estate is based upon alleged assignment of corporate stock on a pledge to secure a loan to decedent, who died before the stock was to be delivered under the assignment, and one of the subscribing witnesses testified as to its execution and delivery, and the other testified that she signed it after the death of decedent at the request of claimant, the claim will be denied, on the ground that claimant has not established his right of recovery by clear and convincing testimony.

　[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. § 221.*]

In the matter of the settlement of the account of the People's Trust Company, executor of the estate of William C. Roberts. Decree rendered.

Wingate & Cullen, of New York City (T. Ellett Hodgskin, of New York City, of counsel), for accounting executor.

James M. Gray, of Brooklyn, for Robert B. Honeyman, an executor.

Blandy, Mooney & Shipman, of New York City (Edmund L. Mooney, of New York City, of counsel), for George S. Hice, as claimant and as executor.

W. H. Albro, of Middleburg, for Marietta J. Roberts.

Edwards J. Dowling, of New York City, special guardian.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

KETCHAM, S. One of the executors presents a claim against the estate, based upon an alleged assignment to him by the decedent of 250 shares of the stock of a corporation. The instrument bears the unquestionable signature of the decedent and the equally authentic signatures of two persons apparently signing as witnesses. One of these two persons swears to the execution and delivery of the paper. The other swears that she was not present at any time when the assignment was either signed or delivered, and that she signed it after the death of the decedent at the request of the claimant.

The delivery is alleged to have taken place one month before the death of the decedent, and at a time when he was in his last illness and was regarded by the claimant as in danger of death.

While, in terms, the assignment was of present and executed effect, the stock which was the subject thereof was then under pledge to secure a loan to the decedent; the instrument provided for the delivery of the stock in the future, and the death of the decedent occurred before the time for the delivery of the stock came.

Many witnesses as to the circumstances surrounding the parties at the time of the transaction alleged give testimony tending, alternatively, to prove and disprove the claim. Evidence as to a declaration of the decedent possibly referring to the existence of the alleged assignment is given by one credible witness.

Profuse proof is made as to the statements, conduct, and relations of many of the witnesses, intended to contradict and discredit them. Documentary evidence has been massed for and against the claim. The conflict thus produced is beyond reconciliation. No solution can be reached without the recognition of conscious untruth either in the prosecution or defense of the claim.

It is well settled as to certain claims against the estates of decedents that they must be viewed with caution, and must not be allowed except upon clear and convincing proof. Shakespeare v. Markham, 72 N. Y. 400; Hamlin v. Stevens, 177 N. Y. 39, 69 N. E. 118; Rousseau v. Rouss, 180 N. Y. 116, 72 N. E. 916; Roberge v. Bonner, 185 N. Y. 265, 77 N. E. 1023; Holt v. Tuite, 188 N. Y. 17, 80 N. E. 364; Reilly v. Burkelman, 149 App. Div. 549, 134 N. Y. Supp. 13; Apthorp v. Thurston, 153 App. Div. 572, 138 N. Y. Supp. 41.

It has sometimes been said, in cases within this rule, that the claim should be rejected, unless established by "the strongest evidence" (Shakespeare v. Markham, 72 N. Y. 400, 403), "very satisfactory evidence" (Van Slooten v. Wheeler, 140 N. Y. 624, 633, 35 N. E. 583, 587), "evidence so strong and clear as to leave no doubt" (Hamlin v. Stevens, 177 N. Y. 39, 48, 69 N. E. 118, 121), or "the clearest and most convincing evidence" (Rousseau v. Rouss, 180 N. Y. 116, 121, 72 N. E. 916, 918).

Without suggestion that in these statements of the law the superlative is also superfluous, it is enough for the present case to determine whether or not it is to be governed by the rule in any of its forms.

Generally, the declaration of the rule has so absorbed the prominent facts found in the case in which it has been applied that the rule as announced would seem to be restricted to cases in which the same or like facts were reproduced. Thus it is laid down that the higher de-

gree of proof is required when the claim is based upon a contract to be enforced after the death of the person against whose estate it is asserted (Shakespeare v. Markham, 72 N. Y. 400, 403), as if it made a difference whether the contract was by its terms enforceable after the death, or was enforceable at a time which happened to come after the death. Again, it is intimated that the rule is especially applicable to parol contracts (Rousseau v. Rouss, 180 N. Y. 116, 121, 72 N. E. 916), but without permitting the inference that in the case of a written contract, where the whole question of execution and delivery may depend upon oral evidence, no degree of caution is required.

It is suggested that certain contracts "should be in writing, and the writing should be produced" (Hamlin v. Stevens, 177 N. Y. 39, 50, 69 N. E. 118, 122); but this cannot be taken as any intimation that, where the delivery of the writing rests in part upon parol evidence, there is no room for the operation of the rule of caution and the requirement of clear proof.

The case last cited declares that "if the contract be ever based upon parol evidence it should be given or corroborated in all substantial particulars by disinterested witnesses"; but this is far from denying that the same proof is equally necessary where a written contract is alleged and its delivery and operative value are the subject of conflicting evidence.

It is inconceivable that the definition of this rule, in its relation to the circumstances of separate cases, was ever intended to exclude from its operation any other set of circumstances which might fall within the scope of the reason which inspires it. The ordinary and obvious grounds for the rule must appear in any class of cases where a claim against an estate is based upon any transaction in which the decedent personally participated, and the claim is not advanced until after his death. The dominant reason for the rule is that by the death of one of the parties to the alleged transaction the guardians of his estate lack his testimony.

The requirement of clear and convincing evidence is no qualification of the only rule of decision applicable to the proof of civil cases, viz., that affirmative allegations must be proven by the fair preponderance of evidence. Roberge v. Bonner, 185 N. Y. 265, 268, 77 N. E. 1023. If any nicety be required, the true doctrine must be that, because of the dangers and limitations to which a cause of action and its defenses are subject when one of the parties whose oath might be influential upon the inquiry is dead, there can be no fair preponderance in favor of the claim, unless the evidence in its support be sufficiently clear and convincing to withstand the scrutiny which a rational distrust would provoke.

Under such circumstances there arises a probative suggestion against the demand. This is evidence, and only evidence can overcome it. It should prevail, unless it is opposed by a volume of evidence in excess of that which might have been convincing if the death had not occurred.

Can there be any doubt that the present case is within both the reason and the control of the admonition that the claim should be rejected, unless proven by clear and convincing evidence?

The decedent's signature would ordinarily tend to establish execution and delivery of the instrument, and under any rule the presumptions arising from the face of the paper and its possession by the claimant must be regarded. But the force of these presumptions yields, at least in part, and the inferences of execution and delivery become merely a feature merging into the mass of evidence when, on one hand, the claimant specifically asserts that the execution and delivery took place upon a definite occasion, and a person appearing as a subscribing witness swears that the only execution and delivery which are asserted never had any existence.

In this condition the question is: Was the paper made and delivered by the decedent in the presence not only of the witness who remains faithful to the claimant, but also of the witness who now disowns the transaction, and was this all done on the single occasion assigned by the claimant?

Not only by the testimony of the witness who swears against the execution of the paper, but by other suggestive evidence, the issue is forced as to whether, at the particular time in question, certain acts were performed. The proof for or against such acts rests so largely in parol, and is so dependent upon the limitations of human truth and memory, that any rule of inquiry ever devised for the protection of estates against claims based upon oral contracts would seem equally applicable where the physical acts and sayings which might constitute the making of a written contract by a person since deceased are the prominent issue.

What could be the distinction which would provoke a measure of caution as to whether the decedent and others did and said such things as might constitute an oral promise, but would neglect the same means if the question was whether the decedent and others did and said such things as might constitute the making and delivery of a written contract?

Has the claimant upon the whole case established his right of recovery by clear and convincing evidence? By this test the claim is disallowed.

The other claim of the same executor against the estate is allowed at the sum of $3,001.64, with interest from the 12th day of April, 1910.

Decree should be presented in accordance with the foregoing views.

Decreed accordingly.